UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD

SHANNON LOIS LESTER-MUNCY,

          Plaintiff,

v.                                   CIVIL ACTION 1:14-cv-28804

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10) and Brief in Support of Defendant's Decision (ECF No. 13).

### Introduction

On September 6, 2011, Claimant filed a Title II application for disability and disability insurance benefits (DIB), alleging disability beginning September 1, 2011 (Tr. at 10). The claim was initially denied on February 28, 2012, and upon reconsideration on May 14, 2012. On May 23, 2012, Claimant filed a written request for a hearing. On June 17, 2013, an Administrative Law Judge (ALJ) held a video hearing. Claimant appeared in Bluefield, West Virginia, and the ALJ presided over the hearing from Roanoke, Virginia. On August 9, 2013, the ALJ denied claimant's application for DIB (Tr. at 20). On September 25, 2014, the Appeals Council (AC) upheld the decision of the ALJ. Consequently, Claimant filed a complaint before this Court seeking reversal of the Commissioner's final decision.

### Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined

as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2014).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* § 404.1520(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2014).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of September 1, 2011, and meets the insured status requirements of the Social Security Act through December 31, 2005 (Tr. at 12).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of fibromyalgia, radial tunnel syndrome and epicondylitis of the right elbow, a depressive disorder and an anxiety disorder. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 13).  The ALJ then found that Claimant has a residual functional capacity to perform sedentary work except she requires the opportunity to alternate sitting and standing in place at the work station and can only occasionally stoop, balance, crouch, crawl, kneel and climb ramps and stairs.  Claimant can no more than occasionally reach overhead and can frequently but not constantly finger, handle or reach in all other directions with the bilateral upper extremities.  Claimant's moderate limitation in concentration, persistence and pace further limit her to the performance of simple, but not detailed, instructions but the claimant is able to deal with changes in a routine work setting and respond appropriately to supervision, coworkers and usual work situations (Tr. at 17).  The ALJ concluded that Claimant could not perform past relevant work but could perform work as an office clerk, surveillance system monitor and receptionist (Tr. at 19). On this basis, benefits were denied (Tr. at 20).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

"Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

### Claimant's Background

Claimant was born on February 19, 1970 (Tr. at 193). Claimant lives with her husband and son. She has a four year college degree in early childhood education. Claimant has a driver's license (Tr. at 210).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to properly weight the opinions of Claimant's treating physician (ECF No. 10). Claimant argues that the hypothetical question the ALJ relied upon to deny benefits failed to fairly consider all of Claimant's impairments and was therefore improper. Defendant asserts that the ALJ adequately evaluated the medical evidence (ECF No. 13). Defendant asserts that the Commissioner satisfied her burden of demonstrating that Claimant could perform other substantial gainful activity in the national economy.

4

Medical Record

The Court adopts the medical record findings asserted by Claimant and Defendant to the extent as follows (ECF Nos. 10 & 13):

Claimant treated for fibromyalgia with Wassim Saikali, MD. (R. 297– 299). Dr. Saikali diagnosed fibromyalgia and noted depressive symptoms. (*Id.*). On April 13, 2009, Claimant transferred her care to Susan Gharib, MD; a physician who specializes in the treatment of fibromyalgia. (R. 326 - 331). Dr. Gharib documented "symptoms of joint stiffness and muscle pain in the neck, left shoulder, left hip, right hip, feet, elbows and low back." (R. 326). It is noted that the symptoms are aggravated by movement and walking. (*Id.*). Dr. Gharib's physical examination documents eighteen (18) specific positive trigger-points. (R. 329). She was again diagnosed with fibromyalgia. (R. 330). Over the course of several months, Claimant treated with Dr. Gharib on four occasions. (R. 332 - 343). On each of the visits, Dr. Gharib notes "since last visit, not doing well with overall symptom control. Increased pain leading to marked reduction in activity level." (*Id.*). During this time, medication was not working successfully for Claimant. Dr. Gharib changed her medication three times during this period.

On November 9, 2010, Dr. Gharib noted that Claimant was experiencing dry eyes, headaches, jaw popping, pain throughout her body, fatigue and a loss of interest in sex. (R. 341). At this time, Dr. Gharib suspected that many of Claimant's symptoms were due as much to depression as fibromyalgia. (R. 343). Dr. Gharib suggested that Claimant present to a psychiatrist for ongoing psychiatric medical treatment and management of antidepressants. (R. 343).

On December 20, 2010, Claimant commenced ongoing psychiatric treatments with Safiullah Syed, MD. (R. 412). Dr. Syed noted that Claimant presented with mood problems, anxiety and fibromyalgia. He noted that she was tearful and told him that she had gained twenty to thirty lbs. (*Id.*). Claimant told Dr. Syed that she used to be "quite active" and that she owed a horse; however, due to her medical conditions she was unable to ride her horse. (*Id.*). Dr. Syed performed a "mental status examination" and documented that Claimant was tearful and spoke in a low tone secondary to her depression. (R. 413). Dr. Syed diagnosed her with MDD secondary to fibromyalgia.

Claimant next treated on January 24, 2011, with Dr. Gharib. This was a routine follow up for her ongoing fibromyalgia. (R. 344). Dr. Gharib again noted that in the

5

interval since her last visit, she has not done well with overall symptom control and that she was experiencing increased pain leading to marked reduction(s) in activity levels. (R. 344). She complained of continued muscle pain in her upper and lower extremities.

On March 1, 2011, she presented again to Dr. Syed for psychiatric care. (R. 411). At that time it was documented she continues to have problems with fibromyalgia; particularly, that it drains her leaving her tired and sleepy in the afternoon. (*Id.*). Despite being prescribed medication, she continued to have problems with her mood. (*Id.*). Dr. Syed increased her antidepressants. (*Id.*).

On March 28, 2011, she presented to Dr. Gharib for follow up treatment for fibromyalgia. (R. 347). Dr. Gharib again notes she was not doing well with symptom control and that it was leading to marked reduction in daily activities. (*Id.*). She complained of pain all over, and that she was having problems concentrating at work. (*Id.*).

Claimant continued to work; however, her medical condition deteriorated to the point she was ordered off work by her physicians. She was placed on FMLA for approximately one month. During this time, without the added stress of life and work, her condition improved slightly. The Plaintiff treated psychiatrically on May 23, 2011. (R. 410). Dr. Syed noted she was stressed and overwhelmed at work and she was not concentrating well. (*Id.*). Claimant told Dr. Syed she was given time off work which helped her condition. (*Id.*)

On August 16, 2011, the Plaintiff treated psychiatrically with Dr. Syed. (R. 409). She was not doing well and was stressed out. She reported that she was off work by Dr. Oaf (sic) for a month and that she felt good when she was at home. However, since she has returned to the workforce she is overwhelmed, frustrated, irritable with her son, and feels like giving up. (R. 409).

On August 29, 2011, Claimant presented to her primary care physician, Dominador Lao, MD. (R. 380). Dr. Lao notes she was unable to concentrate and was anxious due to problems at work stemming from her inability to complete tasks. (*Id.*). She complained of feeling depressed, crying and aching from her head to toes. Dr. Lao noted multiple trigger points and diagnosed her with exacerbation of fibromyalgia secondary to stress from work and her supervisor, anxiety and depression. (*Id.*). He further noted that her loss of concentration was likely due to depression and could also be related to medication. (*Id.*).

6

At this point, Claimant was unable to work and again placed on FMLA. Approximately one week later, on September 6, 2011, Claimant filed for disability benefits. At the time of her application, Claimant had been treating medically for fibromyalgia, depression and anxiety for approximately twenty-two (22) months.

Claimant continued to treat medically after filing for disability. She was unable to return to work and was discharged from employment once her FMLA leave time was expended. Her discharge from employment as precipitated by her fibromyalgia, depression and anxiety.

On October 10, 2011, she again presented to Dr. Lao. He noted she was still complaining of generalized body weakness and fatigue. Claimant told Dr. Lao that that resting at home helped with her symptoms and helped her function better mentally and physically. (R. 378). The next day, Claimant presented to Dr. Gharib for a fibromyalgia follow up appointment. (R. 357). Dr. Gharib documented that Claimant was not working due to being overwhelmed. She noted that she was having a hard time going back to work due to her medical condition. (*Id.*). Dr. Gharib diagnosed her with fibromyalgia, easy fatigability and depression secondary to fibromyalgia. (*Id.*).

On November 8, 2011, Dr. Syed notes that Claimant had been terminated from work. She told Dr. Syed that her boss told her she was using fibromyalgia as an excuse regarding her work. Claimant again reported that she was not able to concentrate and was forgetting things. Additionally, the Plaintiff complained of social anxiety and was not going outside of her home. (R. 408). Dr. Syed planned to obtain psychological testing and get disability paperwork filled out. (*Id.*).

On November 9, 2011, she presented to Dr. Lao complaining of headaches, elbow and back pain. Dr. Lao noted trigger points secondary to fibromyalgia. On November 21, 2011, Dr. Syed expressed his opinions of Claimant's functional capabilities. (R. 312 - 314). Dr. Syed had treated Claimant on five occasions, over the course of approximately eleven months when he formulated his opinions regarding her functional abilities. (*Id.*). Dr. Syed opined that due to mental illness, Claimant's ability to perform the following work-related activities are seriously limited:

- Relate to co-workers;
- Deal with the public;
- Interact with supervisors;
- Deal with work stresses;
- Maintain attention/concentration

7

- Understand, remember and carry out complex job instructions;
- Behave in an emotionally stable manner;
- Relate predictably in social situations; and
- Demonstrate reliability.

(*Id.*).  Dr. Syed's assessment paints a grim picture of Claimant's mental health status and her ability to participate in the workforce.

Thereafter, on December 7, 2011, Crystal Whittington, M.A., at the behest of Dr. Syed, performed a psychological test assessment of Claimant. (R. 365 – 367). It is noted Claimant was terminated from her employment due to "maxing out" her medical leave.   Despite being out of leave-time, Claimant's doctor was of the opinion that she still needed to be off work. (R. 365).  Ms. Whittington found the Plaintiff to be cooperative in participating in the evaluation; and that she complained of pain and was up and down many times throughout the assessment.  (*Id.*). Objective testing revealed: "Her score of 43 places her within the severe range of depression. She reported severe symptoms of feeling that she is being punished, trouble making decisions, lack of energy, irritability, concentration difficulty, fatigue, and loss of interest in sex. She reported she has thoughts of killing herself but would not c a r r y them out."

Her score of 37 places her within the severe range of anxiety. She reported severe symptoms of inability to relax, dizziness or lightheadedness, feeling unsteady, and feelings of choking. (R. 367). Ms. Whittington further determined that the Plaintiff suffers from severe deficiencies in her ability to concentrate. (*Id.*).  Finally, Ms. Whittington noted Claimant performance on testing was lower than one would expect and that it was likely related to pain and discomfort from fibromyalgia. (R. 366).

On February 1, 2012, the Plaintiff presented to Dr. Lao with complaints of pain from fibromyalgia and headaches. (R. 318 & 375). She next saw Dr. Syed on February 28, 2012, for ongoing psychiatric care. (R. 364). At this time she was feeling better as a result of being off work and she was attempting to exercise. (*Id.*). Unfortunately, her recovery was short lived.  On May 22, 2012, she presented again to Dr. Syed. (R. 363). It is noted she was not doing well; her energy level was down; and she was experiencing family problems. (*Id.*). Claimant appeared depressed and presented with a flat affect. (*Id.*). Her condition was virtually unchanged on September 6, 2012, where it is noted that "she continues to be the same. She stays at home. She has anxiety if she goes out. She has a

8

barn and horses, that is what keeps her going[1]."  (R. 394).

On May 16, 2013, (approximately three weeks before the hearing) Claimant treated with Dr. Syed. (R. 399). He noted that medication has helped, but she was still having problems with sleep. It is also noted that she dropped a pizza on her arm and burned herself. (*Id*.).

## Discussion

### Weight Afforded Examining Physician Opinion

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide a detailed, longitudinal picture of a claimant's alleged disability. *See* 20 C.F.R. 416.927(d)(2) (2013). Thus, a treating physician's opinion is afforded controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence. *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. 416.927(d)(2) (2005). Under 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 416.927(d)(3), (4), and (5) add the factors of supportability, consistency and specialization. Additionally, the regulations state that the Commissioner will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion. 416.927(d)(2).

Under 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the

---

[1] In clinic notes dated December 20, 2011, Claimant's history stated that she "does work with horses, feeding horses, etc." (Tr. at 402).

other evidence in the record." *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967).  Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining whether a claimant is disabled under the Act. *Johnson v. Barnhart*, 434 F.3d 650, n. 5 (4th Cir. 2005).  The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by medically acceptable evidence and consistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2) and 416.927.  If a medical opinion is not supported by relevant evidence or it is inconsistent with the record as a whole, it will be accorded significantly less weight.  *See* 20 C.F.R. §§ 404.1527 (c)(3), (4) and 416.927; *Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Moreover, a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work.  These decisions are solely the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues.  *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927; Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (S.S.A.).

Claimant asserts that the ALJ violated the treating physician rule in giving no weight to the opinions of treating physician Safilullah Syed, M.D.. Claimant argues that the ALJ resorted to conclusory statements that Dr. Syed's opinions "are inconsistent with Dr. Syed's own treatment notes," however, the ALJ failed to point out the inconsistencies (ECF No. 10).

10

The Social Security Administration must follow a sequential process when evaluating opinion evidence.    20 C.F.R. § 416.927 controls how the Social Security Administration (SSA) is to evaluate opinion evidence.  Generally, the SSA is required to give more weight to opinions from treating sources, since these sources are likely to be the    medical    professionals most able to provide detailed, longitudinal picture of a claimant's medical impairment.  20 C.F.R § 416.927(C)(2). In the event that the SSA does not give a treating source  opinion  controlling weight, the  SSA must  apply  and  evaluate all  of  the  following factors:

> (1) Length of treatment relationship and frequency of examination;
>
> (2) Nature and extent of treatment relationship;
>
> (3) Supportability of opinion;
>
> (4) Consistency of opinion with the record;
>
> (5) Specialization of source; and
>
> (6) Other Factors.
>
> See 20 C.F.R. 416.927(C)(2)-(C)(6).

The ALJ failed to evaluate the above factors when assigning weight to the opinions of Claimant's treating physicians, Dr. Safiullah Syed and Suzanne Gharib, M.D..  Dr. Syed was Claimant's treating psychiatrist.  However, the ALJ gave no weight to his opinion while giving great weight to the opinion of State agency psychological consultants.  The ALJ stated that Dr. Syed's opinion "is inconsistent with Dr. Syed's own treatment notes, the claimant's outpatient treatment history and the claimant's activities of daily living" (Tr. at 18). The ALJ did not specify which treatment notes, outpatient treatment history and activities of daily living were inconsistent Dr. Syed's opinion.

Additionally, the ALJ failed to assign weight to the opinions of Claimant's treating Rheumatologist, Suzanne Gharib, M.D..  Dr. Gharib assessed Claimant to have fibromyalgia and depression.  Claimant saw Dr. Gharib routinely every one to three months.  Although the ALJ did not specify the weight given to Claimant's treating rheumatologist, she did give some weight to State agency medical consultants' opinions that Claimant retained the RFC to perform a range of light work[2] (Tr. at 18).

Conclusion

In conclusion, the ALJ failed to evaluate the opinions of Claimant's treating physicians in accordance with the regulations and case law and did not assign them appropriate weight.  Consequently, the undersigned proposes that the United States District Court remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action. Other issues raised by the parties shall be addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), **DENY** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 13), **REVERSE** the final decision of the Commissioner and **REMAND** this case for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Judge David A. Faber.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and

---

[2]  The ALJ found that the record as a whole supports a further reduction in Claimant's RFC to the range of sedentary work (Tr. at 18).

12

then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   February 29, 2016.

Dwane L. Tinsley
United States Magistrate Judge

13